

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00022-CR
_____

JASON EUGENE ARNOLD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1424463D

---

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Jason Eugene Arnold appeals from his conviction for the second-degree felony offense of sexual assault for which he received a ten-year, probated sentence. *See* Tex. Penal Code Ann. § 22.011(a)(1). He argues that the trial court abused its discretion by limiting his cross-examination of the complainant, which he asserts violated his constitutional confrontation rights, and by excluding portions of his custodial-interrogation video, which he contends violated his constitutional rights to due process and evidentiary rule 106. Arnold's arguments regarding the cross-examination limits either were not preserved or did not violate the confrontation clause. Arnold did not raise his constitutional arguments regarding the video in the trial court, and the trial court did not abuse its discretion under the rules of evidence by excluding the redacted portions of the video. Accordingly, we affirm the trial court's judgment.

## I. BACKGROUND

### A. THE SEXUAL ASSAULT[1]

In August 2015, Arnold's adult stepdaughter Angela[2] stayed at her mother and Arnold's house. She woke up that night with Arnold naked and on top of her with his penis in her vagina. Angela immediately ran to her mother's room, woke her up,

---

[1]Arnold does not attack the sufficiency of the evidence to support his conviction; thus, we briefly recount the facts to put his evidentiary complaints in context.

[2]This is an alias. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3).

and told her what had happened. Angela then called her boyfriend Paul[3] to come pick her up. When he arrived and Angela told him what Arnold had done, Paul immediately called the police. Angela submitted to a sexual-assault exam and several vaginal swabs were taken. Sperm was detected on the swabs with a mixed profile that included a major contributor and "at least one minor contributor." Arnold could not be excluded as the major contributor of the Y chromosome DNA found in the samples;[4] but Arnold was excluded as a minor contributor of the Y chromosome DNA. Angela's DNA was found on Arnold's penis after officers obtained a penile swab.

## B. THE TRIAL

A grand jury indicted Arnold for sexual assault. Before trial, the State notified Arnold that Angela had been arrested and convicted of theft in 2014 and had been arrested for misdemeanor driving while intoxicated (DWI) approximately three months before Arnold's trial date. At a hearing outside the jury's presence shortly before opening statements were made, the State sought to exclude evidence of the pending DWI charge. Arnold argued that this evidence should be admitted if "there's been any promises or concessions made to [Angela] regarding that case" because she would be in a "vulnerable relationship" with the State. The State represented that it had made "[n]o deals, no promises" with Angela "about any pending matters she may

---

[3]Again, this is an alias.

[4]However, 99.937% of the population could be excluded.

3

have." The trial court implicitly excluded the evidence, noting that "if her DWI is still pending, that's a pending offense" and that "there's been representation by the prosecutor that there's no deals . . . made." *See* Tex. R. App. P. 33.1(a)(2)(A).

At an additional hearing outside the jury's presence before opening statements to the jury, Arnold questioned Angela in an offer of proof regarding her previous sexual conduct. *See* Tex. R. Evid. 103(c), 412. Angela testified that she had had unprotected sex with Paul approximately three days before Arnold sexually assaulted her. She further testified that her mother and Arnold had sent her to drug rehabilitation for her heroin addiction "three or four" times before she completely quit using the drug in February 2015. Arnold then requested that Angela's previous sexual history be admitted under the rules of evidence to explain the DNA evidence, specifically the unidentified sperm found in Angela's vagina during the sexual-assault exam. *See* Tex. R. Evid. 412(b)(2)(A). The trial court ruled that it would allow Arnold to question Angela about having sex with Paul three days before the assault[5] but that Arnold could not question Angela about her prior heroin addiction, citing rule 608(b). *See* Tex. R. Evid. 608(b).

During Angela's subsequent trial testimony, she stated that she previously had "moved to Michigan with my real dad" when she was eighteen. Arnold sought to cross-examine her about the reasons she had moved to Michigan. The State objected that such testimony was not relevant, and Arnold responded that Angela had "opened

---

[5]Arnold did so during Angela's testimony before the jury.

4

the door" to such evidence. The trial court sustained the State's objection and allowed Arnold to make an offer of proof outside the presence of the jury. During Arnold's offer, Angela testified that her mother and Arnold had forced her to go to Michigan to live with her father for the final six weeks of her senior year of high school. Angela agreed that this caused her to be angry with Arnold, but she stated, "It was actually nice to see my dad. It wasn't good for me, but it was nice to go up there." Angela denied that she was sent to Michigan because of a drug problem. At the end of the hearing, the trial court stated that the State's objection "remains sustained."

The State also introduced into evidence a portion of Arnold's videotaped custodial interrogation, having redacted Arnold's references to Angela's past heroin use, to her stays at drug-rehabilitation clinics, and to the fact that Arnold had not allowed her to invite "someone else" over to his house the night of the alleged assault. Arnold objected to the redactions and argued that the entire video should be considered by the jury under the rules of evidence because Arnold's refusal to let Angela have a friend over close in time to the sexual-assault allegations showed her motive to fabricate:

> Under Texas Rule of Evidence 106, remainder of or related writings or recorded statements, if a party introduces all or part of a writing or recorded statement, the adverse party may introduce at that time any other part of any other writing or recorded statement that in fairness ought to be considered at the same time.
>
> . . . .

5

And I think in - - under Rule 106, in fairness, the jury should hear the whole statement because Mr. Arnold is telling the detective that anytime [Angela] comes over, she's a drama factory, it's a major malfunction, that there's always problems. He's trying to provide some context to the story to, you know, what happened.

He discusses the incident of how he claims - - Mr. Arnold claims that to her he's always the asshole, excuse my language, but that's what he said on the tape, because of putting his foot down on Friday night to not allow someone else to come over to the house, which could go to motive or bias against Mr. Arnold. He talks about how . . . [Angela] just isn't happy with her life and the choices that she's made.

It puts a lot of the things into context, Judge. And I think under Rule 106, I think that we are entitled to publish the entirety of the statement. . . . I think it would also leave a false impression with the jury that this is maybe the entire statement. . . . But we - - at the very least we should be able to publish the entirety of it.

*See* Tex. R. Evid. 106. The trial court overruled Arnold's objection. Arnold then asked that the unredacted version be admitted as part of the appellate record "because we're being denied the opportunity to show bias and motive against Mr. Arnold, which is always a relevant matter for cross-examination." *See* Tex. R. Evid. 404(b)(2) (providing evidence of person's extraneous bad acts, while generally inadmissible to prove character conformity, may be admissible to prove motive or intent). The trial court admitted the unredacted video for purposes of our review. The redacted video later was admitted into evidence during the investigating police officer's testimony, and Arnold unsuccessfully renewed his "previous objections."

During Angela's testimony, the State objected to Arnold's cross-examination about whether Arnold had refused to let her have "someone" over. The State

6

explained that Arnold's statements on the video about this incident had been redacted "because it's implying that [Angela] wants to invite somebody over to have a sexual relationship with them and [Arnold] wouldn't let her." The trial court ruled that Arnold could question Angela about why she would have been mad at him but could not "argue anything else." In response to Arnold's question concerning whether Angela wanted to invite someone over late that night, she testified that she could not remember if the incident had occurred, but if it had, she identified which male friend it would have been. Arnold did not question Angela further about the incident. Angela agreed, during cross-examination, that she and Arnold never had a good relationship and that she "never really cared for him."

The jury found Arnold guilty of sexual assault. After a punishment hearing, the jury assessed his punishment at ten years' confinement with a $10,000 fine and recommended that the trial court suspend imposition of the sentence and place him on community supervision and that the payment of the assessed fine be ordered as a condition of community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.055(a). The trial court followed the jury's recommendation, suspending imposition of the ten-year sentence (but not the payment of the fine) and placing Arnold on community supervision for ten years.

## II.  THE CONFRONTATION CLAUSE

Arnold argues in his first issue that the trial court abused its discretion by not allowing him to cross-examine Angela about her motive to fabricate[6]—anger about Arnold and her mother forcing Angela to move to Michigan—and by refusing his request to question Angela about her then pending DWI charge.  He substantively bases these arguments solely on the Confrontation Clause found in both the United States and Texas Constitutions.  U.S. Const. amend. VI; Tex. Const. art. I, § 10.  We recognize that in one sentence of his summary of the argument of his brief, Arnold asserts that the trial court's refusal to allow him to explore Angela's motive to fabricate violated "his State and Federal Constitutional rights *and* the Texas Rules of Evidence."  [Emphasis added.]  But the substance of his argument pertaining to this issue addresses only the Confrontation Clause, failing to cite a rule of evidence as authority and advancing no argument founded on the evidentiary rules.  We address this issue as Arnold briefed it—under the Confrontation Clause.[7]  *See* Tex. R. App. P. 38.1(i); *see, e.g.*, *Buntion v. State*, 482 S.W.3d 58, 70 n.4 (Tex. Crim. App. 2016)

---

[6]On appeal, Arnold asserts that these motives arose from her anger at Arnold for forcing her to go to drug rehab in Michigan at the end of her senior year of high school, which he characterizes as a "long-festering grudge."  Arnold argues that the exclusion of this evidence left the jury "with no explanation for why [Angela] would have made such an allegation."

[7]Arnold does not argue that the Texas Constitution provides greater protections than does the United States Constitution; thus, his first issue arises solely under the federal confrontation right.  *See Aldrich v. State*, 928 S.W.2d 558, 560 (Tex. Crim. App. 1996).

(addressing issue as substantively briefed and not as stated in issues-presented portion of brief); *Merrick v. State*, Nos. 02-17-00035-CR, 02-17-00036-CR, 2018 WL 651375, at *4 (Tex. App.—Fort Worth Feb. 2, 2018, pet. ref'd) ("[W]e will address his issues as he substantively briefed them . . . .").

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling.[8]  *See* Tex. R. App. P. 33.1(a)(1)(A); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016).  While preservation is not a hyper-technical inquiry, the party seeking admission of excluded evidence must clearly tell the trial judge what he wants and why he is arguably entitled to it at a time when the judge can address the issue.  *See Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018); *Merrick*, 2018 WL 651375, at *7.  The complaint made on appeal must comport with the complaint made in the trial court.  *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

In response to the State's relevance objection to evidence regarding Angela's forced move to Michigan, Arnold merely made a "general appeal to a proffer's relevance" based on his assertion that Angela had raised the issue during her

---

[8]Even though the State does not raise preservation on appeal, we must independently review the record because preservation is a systemic requirement. *See Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016).

9

testimony—she had "opened the door."[9] *Golliday*, 560 S.W.3d at 671. Even though Arnold made an offer of proof of the excluded testimony, Arnold's general relevance argument was insufficient to present his Confrontation Clause argument to the trial court and thereby preserve it for our review. *See id.* at 668–69 (relying on *Reyna v. State*, 168 S.W.3d 173, 175, 179 (Tex. Crim. App. 2005)).

Regarding admission of Angela's pending DWI, Arnold argued to the trial court that the evidence was admissible based on her "vulnerable relationship" with the State and pointed to "Davis versus Alaska as [his] legal authority regarding being able to question about the DWI." *Davis* is a well-known Supreme Court case holding that the refusal to allow a defendant to cross-examine a State's witness about his probation status violated his constitutional right to confront the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 316–18 (1974). We conclude that this argument sufficiently apprised the trial court that he sought admission of the DWI evidence under the Confrontation Clause. *See Ford v. State*, 305 S.W.3d 530, 533 n.16 (Tex. Crim. App. 2009); *Clarke v. State*, 270 S.W.3d 573, 578–80, 582–83 (Tex. Crim. App. 2008); *Turner v. State*, 413 S.W.3d 442, 449 (Tex. App.—Fort Worth 2012, no pet.).

Even so, we review the trial court's exclusion for an abuse of discretion, recognizing that a trial judge retains wide latitude to impose reasonable limits on cross-examination. *See Johnson v. State*, 433 S.W.3d 546, 555 (Tex. Crim. App. 2014).

---

[9]Angela testified that she did not attend her mother's wedding to Arnold because she was living in Michigan at the time.

10

To establish that Angela's DWI charge was relevant and admissible, Arnold was required to establish "a logical connection between the evidence suggesting bias or motive"—the pending DWI charge—and Angela's testimony. *Irby v. State*, 327 S.W.3d 138, 152 (Tex. Crim. App. 2010); *see Carpenter v. State*, 979 S.W.2d 633, 634–35 (Tex. Crim. App. 1998); *Pritchard v. State*, No. 2-08-137-CR, 2009 WL 112717, at *5 (Tex. App.—Fort Worth Jan. 15, 2009, pet. ref'd) (mem. op., not designated for publication). Without this causal nexus, a pending yet unrelated charge will not ipso facto create a vulnerable relationship allowing impeachment. *See Irby*, 327 S.W.3d at 152; *Carpenter*, 979 S.W.2d at 634 n.4; *Ramirez v. State*, No. 08-11-00298-CR, 2015 WL 5050134, at *4–5 (Tex. App.—El Paso Aug. 26, 2015, no pet.) (not designated for publication).

Arnold did not establish a logical connection between the pending charge and Angela's testimony and wholly failed to respond to the State's assertion that there was no vulnerable relationship potentially causing Angela to testify favorably for the State in exchange for favorable treatment in her pending DWI case. Based on this record, we cannot conclude that the trial court abused its discretion by excluding this evidence and thereby limiting Arnold's cross-examination of Angela regarding the pending DWI. *See Carpenter*, 979 S.W.2d at 634–35 & nn.4–5; *Gilmore v. State*, 323 S.W.3d 250, 265–66 (Tex. App.—Texarkana 2010, pet. ref'd); *Pritchard*, 2009 WL 112717, at *5.

We overrule Arnold's first issue.

11

## III. THE REDACTED INTERROGATION VIDEO

In his second issue, Arnold contends that that the trial court's exclusion of the redacted portions of his custodial-interrogation video was an abuse of discretion and violated rule 106 and his federal and state due-process rights.[10]  *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 19; Tex. R. Evid. 106.  We review the trial court's exclusion of evidence for an abuse of discretion.  *See Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

We begin, as we must, with preservation.  At no point while seeking admission of the redacted portions did Arnold argue that his due-process rights would be violated by their exclusion.  Arnold clearly limited his trial arguments to rule 106.  Thus, we will address this issue under that rule.  *See* Tex. R. App. P. 33.1(a)(1)(A); *Golliday*, 560 S.W.3d at 670–71.

At trial, Arnold argued that the entirety of the video should be admitted under rule 106 and that its exclusion denied him the opportunity to explore Angela's motive or bias based on Arnold's refusal to let her have her friend come over near the time of the sexual assault.[11]  The trial court overruled Arnold's proffer and stated that Arnold's statements about the refused late-night visitor were "kind of self-serving

---

[10]As with his first issue, Arnold does not assert that the Texas Constitution provides greater due-process protections.

[11]In his brief, Arnold seems to also argue that the redacted portions dealing with Angela's drug-rehabilitation stays should have been admitted; however, Arnold did not raise this portion of his statement in seeking admission under rule 106.  *See* Tex. R. App. P. 33.1(a).

12

[because Angela] said, yes, we had a disagreement and now [Arnold is] going into it also [in the redacted portion of the video]."

Indeed, Arnold's statements about Angela being denied her request to have a male friend come over to Arnold's house were self-serving declarations that were inadmissible as proof of the fact asserted. *See Allridge v. State*, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988); *Lopez v. State*, No. 02-16-00310-CR, 2018 WL 359957, at *2 (Tex. App.—Fort Worth Jan. 11, 2018, pet. ref'd) (mem. op., not designated for publication). The redacted video did not give the jury a false impression, and Arnold failed to establish why the redacted portions were necessary for context; thus, the trial court did abuse its discretion by overruling Arnold's request under rule 106. *Accord United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996). *See generally Elmore v. State*, 116 S.W.3d 801, 807 (Tex. App.—Fort Worth 2003, pets. ref'd) (explaining purpose of rule 106 is to avoid confusion, distortion, or false impression); *Gilmore v. State*, 744 S.W.2d 630, 631 (Tex. App.—Dallas 1987, pet. ref'd) (same).

But even if it were an abuse of discretion to exclude this discrete portion of the video, we would disregard the error because it did not affect Arnold's substantial rights. *See* Tex. R. App. P. 44.2(b). Angela testified during cross-examination that her relationship with Arnold was fractious and although she stated she did not remember asking Arnold to have a friend over late at night,[12] she was able to name which friend

---

[12]Contrary to Arnold's assertion in his brief, Angela did not deny that the disagreement occurred.

13

it would have been. *See Womble v. State*, 618 S.W.2d 59, 62 (Tex. Crim. App. [Panel Op.] 1981); *accord United States v. Abroms*, 947 F.2d 1241, 1250 (5th Cir. 1991) (op. on reh'g) (applying rule 106 to exclusion of recording and finding no abuse of discretion or harm). We overrule issue two.

## IV. CONCLUSION

Arnold did not raise a constitutional, confrontation objection to the exclusion of his cross-examination about why Angela moved to Michigan; therefore, he has not preserved this issue for our review. He sufficiently raised an objection based on the Confrontation Clause to the exclusion of the evidence that Angela had a pending DWI charge. But because he failed to establish the required causal connection that would render such evidence relevant, we cannot conclude that the trial court abused its discretion. Finally, the trial court did not abuse its discretion by excluding an inadmissible, redacted portion of his recorded statement even though Arnold sought to admit it to avoid a false impression to the jury. Accordingly, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 10, 2019